William G. Corbett
vs.
Lucinda C. Penhall.
Exec. et al.
} Eq. No. 11659.

December 8, 1934.

BAKER, P. J. Heard on bill, answer and proof.

This proceeding is brought by the complainant, a person interested in the estate of one Josephine B. Corbett, his deceased wife, under the provisions of Sec. 52 of Chap. 363, General Laws of R. I., 1923, seeking to recover from the respondents approximately $1,000 which he alleges properly constituted part of the assets of said estate.

The complainant prays that the respondent Penhall be directed to deposit in a bank, in the name of said estate, the amount of money involved herein; that on default thereof, certain real estate in East Providence standing in the name of all the respondents be charged with a lien to the amount involved, in favor of said estate, and also for certain injunctive relief against such respondents relative to said real estate.

The evidence presented discloses that the complainant and his deceased wife resided in certain property in Riverside in the Town of East Providence known as the Smith Palace Hotel. About the middle of October 1929, the complainant's wife, Josephine B. Corbett, suffered a shock which affected her left side. There were little or no facilities for taking care of Mrs. Corbett in the Smith Palace Hotel, and on October 21, 1929, she was removed to the home of the respondent Mrs. Penhall, her sister, who lived not far away. This arrangement was carried out at the desire of both Mrs. Corbett and Mrs. Penhall. While Mrs. Corbett was ill in Mrs. Penhall's home, the complainant, Mr. Corbett, visited her occasionally. The length and frequency of his visits and the interest he showed in his wife are somewhat in dispute on the evidence. On November 2, 1929, Mrs. Corbett executed a will which had been prepared at her request by an attorney. This will provided, among other things, that in case a certain legacy of approximately $1,000—referred to as the Brennan legacy—should be paid to the estate of the testatrix after her death, one-half thereof be paid to her husband, the complainant, and the remainder in certain proportions to her sister, the respondent Mrs. Penhall, and to her niece, the respondent Mrs. O'Rourke, Mrs. Penhall's daughter. The will also provided that if the complainant, Mr. Corbett, was alive at the time of Mrs. Corbett's decease, then all her property, real, personal and mixed was bequeathed to him for life.

About the middle of December 1929, the Brennan legacy, so-called, was paid over to Mrs. Corbett in the amount of $952.50, and on December 26, 1929, this sum was deposited in a bank in the joint names of Mrs. Corbett and Mrs. Penhall, with the right of sur-

vivorship. This is the money involved in the case now before the Court. Immediately prior to this date, viz.: about December 21, 1929, the complainant had made some attempt to open a joint account in the names of himself and his wife with the proceeds of this legacy, but this arrangement was never carried out, as apparently Mrs. Corbett would not consent. Mrs. Corbett died January 10, 1930. Thereafter her will was probated and Mrs. Penhall was named executrix, but little or nothing was done towards administering the estate, there evidently being no assets. The money deposited in said joint account and involved in the present case was withdrawn from the bank by Mrs. Penhall on June 5, 1931, and apparently was used towards the purchase of certain real estate in East Providence, the title to which was taken in the joint names of the respondents. On June 27, 1932, a hearing under the statute for the purpose of obtaining information was held by the probate court of East Providence and the present bill was brought July 22, 1932.

In this case the complainant contends, first, that no gift, either inter vivos or causa mortis, of the money involved herein was properly made by Mrs. Corbett to Mrs. Penhall; and, secondly, that when the joint deposit was made Mrs. Corbett was sick and weak and that the respondent Mrs. Penhall took advantage of this situation and induced her sister to make a joint deposit in order that she, Mrs. Penhall, might secure the amount of said Brennan legacy and to prevent the complainant from receiving any of said legacy; and, finally, that the amount of said legacy, with interest, properly belongs to the estate of Mrs. Corbett.

The respondents contend that Mrs. Corbett made a valid inter vivos gift to Mrs. Penhall when the joint account was set up, and, further, that the complainant has been guilty of laches and

that at the present time the positions of the parties have so changed that it would be inequitable and impossible to put the parties into the positions they were in immediately after Mrs. Corbett's death.

Numerous citations of authorities have been made to the Court by the parties concerned. A general discussion of the law relating to gifts inter vivos and causa mortis appears in Vol. 28, C. J., at pages 626 and 687. Our own Court, however, has so frequently and so thoroughly considered these questions that it seems unnecessary to look beyond this jurisdiction for the determination of the law involved herein.

The respondents urge that a consideration of the evidence shows clearly that Mrs. Corbett made a completed inter vivos gift of an interest in the fund in question to Mrs. Penhall. They contend that the facts bring the case at bar within the law as set out in several Rhode Island cases, viz.:

*Whitehead* vs. *Smith*, 19 R. I. 135;

*People's Savings Bank* vs. *Webb*, 21 R. I. 218;

*Industrial Trust Co.* vs. *Scanlon*, 26 R. I. 228;

*Rafferty* vs. *Reilly*, 41 R. I. 47;

*Sullivan* vs. *Cartwright*, 167 Atl. 132.

The general substance of these decisions seems to be that there must be a present intent to make a gift at the time and that there must be an execution of the intent by some act. Further, such intention to make a present gift of a joint interest in a deposit may appear by the statement of the depositor or it may be shown by his acts and by the attendant circumstances.

On the other hand, the complainant claims that the evidence in this case is not strong enough to warrant the finding that a gift was either intended or completed. He calls to the Court's attention several cases which he be-

lieves control the situation in the instant case.

28 C. J., pp. 653, 654;

*Schuyler* vs. *Stephens*, 28 R. I. 506;

*Citizens Savings Bank* vs. *Mitchell*, 18 R. I. 739;

*Providence Institution for Savings* vs. *Carpenter*, 18 R. I. 287;

*In re Bolin*, 136 N. Y. 177.

In connection with the complainant's position herein, the first matter to be considered relates to his claim that the respondents exercised undue influence upon Mrs. Corbett in order to obtain control of the fund.

It is clear from an examination of the testimony that there is no direct evidence whatsoever disclosing the exercise of any such undue influence by any specific act on the part of the respondents. At most it can be said that there was some opportunity in view of the fact that Mrs. Corbett was ill in Mrs. Penhall's house. In this connection it may be noted that the attending physician gave to the bank, at the time the joint account was opened, a statement that in his opinion Mrs. Corbett's mental condition was normal. He testified that she did not begin to fail mentally until within a few days of her death. Unquestionably she was in a weakened physical condition but there is no evidence in the case that her mind was not perfectly sound at the time of the alleged gift. An examination of the authorities reveals that the rule here invoked by the complainant relates more particularly to situations where 'there was some confidential or fiduciary relation existing between the donor and the donee. This was so in the case of *Schuyler* vs. *Stephens, supra*. In the case at bar Mrs. Penhall was Mrs. Corbett's own sister and would be a natural object of her bounty. Further, in said case of *Schuyler* vs. *Stephens, supra*, the res, instead of being a check or a bank book, was a tin box containing valuables. Also in said last mentioned case, there was credible evidence that such box was taken rather than that a gift was made. Further, said case involved gifts causa mortis and not a gift inter vivos. For all these reasons, it seems to the Court that the case of *Schuyler* vs. *Stephens, supra*, and cases of a similar nature are distinguishable from the case at bar.

In this connection, however, it seems proper to give consideration to the fact that Mrs. Corbett had made a will about six weeks prior to the alleged gift, in which she left certain interests in property to her husband. There is no question that said gift, if valid, materially affected her husband's rights under the will, and undoubtedly this matter should be given serious consideration in passing upon the validity of the alleged gift. It seems to the Court, however, after considering all the evidence in the case, that certain reasonable explanations can be made.

In the first place, at the time the will was made the so-called Brennan legacy had not then been received by Mrs. Corbett. Secondly, it is clear that when the will was drawn, she must have had a misconception as to her rights in certain real estate. She evidently believed that she owned property in fee, whereas an examination of her mother's will would tend to show that all she had was a life estate. Further, it may well be that Mrs. Corbett's feelings toward her husband may have changed by reason of his conduct toward her during her illness and that, by the time the Brennan legacy was paid, she had decided that she did not wish her husband to have any part of it.

After careful consideration, the Court has come to the conclusion that the making of the will six weeks prior to the alleged gift, while it should be considered and is of importance, cannot be, in and of itself, controlling herein.

Undoubtedly, the strongest single point in the testimony favorable to the complainant is certain evidence given by Mrs. Penhall in her examination before the Probate Court of East Providence in June 1932. In answer to a question framed by the complainant's counsel, Mrs. Penhall stated in substance that the understanding was that the money was to be Mrs. Corbett's as long as she lived and that on her death what was left was to be hers. If this was a correct statement of the situation, unquestionably the case at bar would fall within the general rule as set out in the case of *Prov. Institution for Savings* vs. *Carpenter, supra,* that such a disposition does not amount to a valid gift inter vivos but is merely an abortive testamentary disposition of the fund.

In answer to this claim of the complainant, the respondents urge that this was one isolated statement made during an examination of Mrs. Penhall which lasted upwards of an hour. The latter testified at the present hearing that while she may have so answered before the Probate Court, if she did so she did not fully understand the import of the question. She is an elderly woman and undoubtedly at the time she testified was not conversant with the nice distinctions of the law in this connection. Further, and perhaps what appeals at this time to the Court, is the fact that it clearly appears that the question asked her was framed by the attorney in his own language, undoubtedly having in mind the Carpenter case, supra, and that all the witness did was to answer "yes." The Court would be inclined to give much greater weight to this statement if the description of what happened had come from the witness' lips rather than from counsel's. The remainder of the evidence given by Mrs. Penhall during the hearing before the Probate Court was substantially similar to the testimony given herein. The Court feels, therefore, that it should not give great weight to this single statement made before the Probate Court.

The evidence presented by the respondents tends to show, in substance, that after the complainant had brought the check representing the Brennan legacy to Mrs. Corbett and had thrown it on her bed, making certain profane remarks in connection therewith, Mrs. Corbett handed the check to Mrs. Penhall and directed her to put it in the bank in their joint names so that it would belong to both of them. After said deposit was made as directed, the book was shown to Mrs. Corbett, who took it and looked at it and then handed it back to Mrs. Penhall and told her that she might withdraw money from it if she desired, and the book remained in Mrs. Penhall's possession until after Mrs. Corbett died.

A careful consideration of all the testimony presented leads the Court to the conclusion that at the time the check was turned over and the joint account opened, Mrs. Corbett did have a present intention of giving her sister, Mrs. Penhall, a joint interest in said fund with the right of survivorship. The Court believes that the whole background of the evidence introduced shows an uncongenial feeling between the husband and wife. It is true that the testimony on this phase of the case is conflicting and that the complainant denies the respondents' evidence, but in this connection the Court has come to the conclusion that the respondents' testimony is the more credible. There appeared in the middle of December to be a good reason for the making of the gift. Mrs. Corbett was lying ill in Mrs. Penhall's house and the latter was taking care of her. There was then no way of knowing how long she might be sick and more or less incapacitated. Undoubtedly,

from the testimony, money for the sickness would have to come largely from the so-called Brennan legacy. While the evidence shows that Mr. Corbett did something to assist his wife, he did not do a great deal. The complainant, apparently, was not conversant enough with his wife's illness to know which side was paralyzed. He testified it was the right whereas, as a matter of fact, it was the left. Further, he made an attempt to open a joint account with his wife of the money derived from said Brennan legacy but she absolutely refused to do so.

It is quite clear from the testimony that his conduct toward her in the past and his method of living were weighing on her mind. Also, the evidence tended to show that it was with some little difficulty that the check representing the Brennan legacy was obtained from Mr. Corbett. Finally, the respondents as witnesses made a much better impression on the stand than did the complainant. His method of testifying was not very satisfactory and the record introduced of his convictions did not tend to improve his credibility. The Court realizes the difficulty in cases of this type where the alleged donor is dead and where the greater part of the evidence must of necessity come from the alleged donee. Such evidence must be scrutinized very carefully by the Court, particularly if there is no corroboration. In this case, however, there is some corroboration by Dr. Platt and Dr. and Mrs. O'Rourke on certain of the points involved.

The Court finds, therefore, that on all the evidence presented a valid, completed inter vivos gift of an interest in the fund in question was made to Mrs. Penhall by Mrs. Corbett, and that the facts in the case at bar bring it within the rules laid down in the cases cited to the Court by the respondents and hereinbefore referred to.

It appears to the Court that the cases of *Citizens Savings Bank* vs. *Mitchell* and *In re Bolin, supra*, are distinguishable from the instant case on their facts. In the former case, the evidence disclosed an attempted gift causa mortis and it was held that the testimony was not sufficiently clear to establish such a gift. In that case there was a mere turning over of a bank book which remained in the name of the donor only and nothing was signed by the alleged donor. In the latter case, there was a joint account opened but the word "survivor" was not used. No words of gift were made and the Court decided that a mere holding of the bank book was not sufficient and that the evidence showed the arrangement was merely for convenience.

In view of the above finding, it is perhaps unnecessary to consider other questions raised. In connection, however, with the respondents' claim of laches, the Court is of the opinion that this contention has considerable merit. The proceeding now before the Court was brought more than two and a half years after Mrs. Corbett's death. While it is true that perhaps the complainant did not have complete knowledge of the whole situation until shortly before the action was brought, nevertheless he clearly had sufficient information to place upon him the burden of asserting any possible rights seasonably. The fund involved was not withdrawn from the bank by Mrs. Penhall until about a year and a half after her sister's death. It was then used in connection with the purchase of certain property jointly by herself and the other respondents. There has obviously been some change in the positions of the parties. The respondents, Dr. and Mrs. O'Rourke, who are not directly involved in the making of the alleged gift, are now joint own-

ers with Mrs. Penhall in the piece of property and undoubtedly may suffer if the relief the complainant asks is granted. Further, Mrs. Penhall took no steps to protect herself for money expended in connection with the care of her sister, Mrs. Corbett, by filing any claim against Mrs. Corbett's estate.

For the reasons above indicated, the prayers of the complainant's bill are denied and the bill is dismissed.

For complainant: William J. Brown.

For respondents: Atwood, Remington, Thomas & Levy.